Marilyn **HORACE**, Plaintiff-Appellee Cross-Appellant,

v.

**CITY OF PONTIAC**, Defendant-Appellant Cross-Appellee.

Nos. 78–1045, 78–1046.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1980.

Decided June 27, 1980.

766

Peter A. Letzmann, Deputy City Atty., Pontiac, Mich., for defendant-appellant cross-appellee.

Cynthia E. Gitt, Employment Discrimination Clinic, Detroit, Mich., Harold L. Curry, Pontiac, Mich., for plaintiff-appellee cross-appellant.

Before EDWARDS, Chief Judge, and BROWN and JONES, Circuit Judges.

EDWARDS, Chief Judge.

The issue in this case is the legality under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976), of a mandatory height requirement of five feet eight inches which served to occasion refusal of plaintiff Horace's application for employment as a patrol police officer for the City of Pontiac, Michigan. The case was tried without a jury before Chief Judge John Feikens of the United States District Court for the Eastern District of Michigan who entered judgment for the plaintiff. Both the plaintiff and the City of Pontiac have taken appeals, the plaintiff claiming inade-

quacy of damages and attorney fees and defendant Pontiac claiming that the District Judge's finding of liability was erroneous. We affirm all aspects of the judgment except attorney fees which we remand for further consideration under *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979).

■ At the trial of this case, it was conceded by both parties that the height requirement for hiring, though neutral on its face, excluded far more women than men and that under *Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the burden of proof shifted to the defendant to show that the height standard was related to job performance. The City of Pontiac undertook to make this showing by introducing testimony of Chief of Police William K. Hanger whose qualifications to testify on this subject were accepted by the District Judge. Chief Hanger's testimony on this score includes the following:

Q. (By Mr. Letzmann): Now, let me ask you why you thought it was necessary that you had a five foot eight height requirement in 1973?

A. . . . Now, my reasoning, based upon my personal experience in law enforcement, was that the taller officer meets less resistance. I think he's more effective in performing his duties, because he gains greater respect, at least, technically from the general public. He has a better vantage point for crowd control situations. He has better access to high places as a result of his longer reach. And pursuant to appearances to be more effective, is able to go over obstacles of a higher nature and run at a faster pace. And I think, in my personal opinion, that the general public has more confidence when they call a police officer who answers a violent, or potentially violent situation when a larger officer arrives. That represents my personal feelings on the matter.

Q. Now, for this, what you classify as being necessary to the police business, did you think that this five foot eight height requirement achieved this purpose that you were looking for? Do you think it makes people—what did you say—be able to look over crowds better, you said longer legs and all these things, did you believe that achieved—the purpose that you were looking for?

A. It seemed to meet our needs effectively for the noticeable observations of the officer who was closer to five feet eight, in my opinion, tended to get into more situations requiring the use of physical force and were, generally, required to use weaponry, rather than their own, to handle these situations.

Q. These were, usually, what you have described to the Court, are these skills that are used by the whole rank of police department sworn officers, or perhaps by a few?

A. These are skills that any sworn member of the department could be required to use.

Q. Are you aware of any study which stands for the proposition that a person below five feet eight cannot effect and consummate arrests in the community with the same efficiency? I'm talking about a patrolman that's a person above five feet eight can.

A. If you're speaking to exceptions included, that could be possible; but as a general rule, based upon my experience and judgment, people of shorter stature encounter more difficulty in effectively performing police duties.

Now, there are exceptions. There are larger people who are not effective in performing police services. And there are short people who can be effective. But in general, based upon my experience and observations, is that the shorter person is less effective and has more difficulty in carrying out his duties.

On cross-examination, Chief Hanger admitted that he had made no comprehensive study to determine whether or not the 5′8″ minimum was factually related to a greater likelihood that a shorter officer would be assaulted on the street as compared to a taller one. Additionally, the City of Pontiac offered no evidence to show that other less potentially discriminatory standards might not serve the job relatedness (i. e., business necessity) purposes sought to be served by the 5′8″ standard. With essentially these facts before him, Judge Feikens held:

"Although a height requirement such as caused Mrs. Horace's rejection is neutral on its face, it has a disparate effect on women since significantly fewer women than men are as tall as 5′8″.[2] Under Title VII a facially neutral employment practice, standard or test may not operate to discriminate against a class on the basis of race, color, religion, sex or national origin unless it is demonstrably related to job performance. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Abrams v. Johnson*, 534 F.2d 1226 (6th Cir. 1976). Since Mrs. Horace showed that she was rejected solely because she failed to satisfy a height requirement and the height requirement had a disparate impact upon women as a group, Mrs. Horace has made out a prima facie case of sex discrimination under Title VII."

"After a prima facie case under Title VII is made out, the burden of going forward shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the use of the test or standard shown to have a disparate impact upon the protected group. If such a defense of business necessity is successfully raised, the plaintiff has the final burden of proving that the stated justification is merely a pretext masking underlying discrimina-

---

**2.** All parties acknowledge this to be true.

tion. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Abrams v. Johnson*, 534 F.2d 1226 (6th Cir. 1976). Both cases concern Title VII cases of race discrimination, but the same standards and order of proof are generally applicable to cases of sex discrimination. *Palmer v. General Mills, Inc.*, 513 F.2d 1040, 1043 (6th Cir. 1975); *Meadows v. Ford Motor Co.*, 510 F.2d 939, 948 (6th Cir. 1975); *cert. denied*, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976); *EEOC v. New York Times Broadcasting Service*, 542 F.2d 356, 360 (6th Cir. 1976)."

"The court concludes that defendant City failed to demonstrate a business necessity for the height requirement. Pontiac Police Chief William Hanger testified that, in his opinion, height gives a psychological advantage to tall patrol officers which makes it easier for them to maintain order without needing to use a firearm. This is insufficient to raise the defense of business necessity under Title VII."

"Although it is recognized that there is a rational basis for requiring police officers to meet a minimum height requirement (*Smith v. Troyan*, 520 F.2d 492 (6th Cir. 1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2246, 49 L.Ed.2d 385 (1976)), the protections of Title VII extend beyond the reach of the Equal Protection Clause. *Satty v. Nashville Gas Co.*, 522 F.2d 850, 855 (6th Cir. 1975), U.S.App.Pending. *See also Smith v. Troyan*, 520 F.2d at n. 3 ('Of course, what Title VII compels may differ from what the equal protection clause, in itself, compels.'); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). ('As the Court of Appeals understood Title VII, employees or applicants proceeding under it need not concern themselves with the employer's possibly discriminatory purpose but instead may focus solely on the racially [sexually] differential impact of the challenged hiring or promotion practices.')

"Under Title VII the defense of business necessity requires a showing that

. . . the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential racial [sexual] impact.'

*Robinson v. Lorillard Co.*, 444 F.2d 791, 798 (4th Cir. 1971), *cert. denied*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971), cited with approval, *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 879 (6th Cir. 1973). *See also EEOC v. New York Times Broadcasting Service*, 542 F.2d at 361."

"Defendant here has made no such showing. No validation studies of the type suggested by the EEOC guidelines (29 C.F.R. § 1607.13) were ever made by the City of Pontiac. Nor was evidence presented to demonstrate that there exist no acceptable alternative policies which would accomplish the business purpose. Indeed, Chief Hanger testified that a strength and agility test was substituted for the height requirement in 1975 with no apparent ill effect. Additionally, James Henderson, a detective sergeant with the Michigan State Police, and Ypsilanti Chief of Police Elwood Dethoff testified that women in general and Mrs. Horace in particular perform well as police officers despite their smaller stature."

"Accordingly, under Title VII of the 1964 Civil Rights Act, the City of Pontiac is liable to Mrs. Horace for its acts of sex discrimination. Mrs. Horace seeks an award of back pay; this is an appropriate remedy under the statute. 42 U.S.C. § 2000e–5(g)."

In affirming Judge Feikens on the City of Pontiac's liability, we are particularly impressed that this record shows that there were acceptable alternative policies which would have accomplished the desired purposes other than the obviously arbitrary 5′8″ height standard.

Chief Hanger testified that a tall police officer has an advantage in a street confrontation in gaining greater deference from persons whom he may be required to confront, in meeting less resistance in the performance of his duty, and in being called upon less frequently to make use of punishing or fatal weaponry to accomplish a lawful and required police purpose. On plaintiff's cross-examination, however, Chief Hanger was unable to present any substantiating studies to establish this claim of job relatedness. He also testified on cross-examination that the 5′8″ height standard was eliminated in 1975 by the Pontiac Police Department, with the substitution therefor of a strength and agility test, and that no ill effects from the point of view of the police had resulted. In *Dothard v. Rawlinson*, 433 U.S. 321, 328–29, 97 S.Ct. 2720, 2726–2727, 53 L.Ed.2d 786 (1977), concerning a similar standard, the Supreme Court said:

> "In enacting Title VII, Congress required "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 [91 S.Ct. 849, 853, 28 L.Ed.2d 158]. The District Court found that the minimum statutory height and weight requirements that applicants for employment as correctional counselors must meet constitute the sort of arbitrary barrier to equal employment opportunity that Title VII forbids. The appellants assert that the District Court erred both in finding that the height and weight standards discriminate against women, and in its refusal to find that, even if they do, these standards are justified as 'job related.' "

### A

"The gist of the claim that the statutory height and weight requirements discriminate against women does not involve an assertion of purposeful discriminatory motive. It is asserted, rather, that these facially neutral qualification standards work in fact disproportionately to exclude women from eligibility for employment by the Alabama Board of Corrections. We dealt in *Griggs v. Duke Power Co.*, *supra*, and *Albemarle Paper Co. v. Moody*, 422 U.S. 405 [95 S.Ct. 2362, 45 L.Ed.2d 280], with similar allegations that racially neutral employment standards disproportionately excluded Negroes from employment, and those cases guide our approach here."

"Those cases make clear that to establish a prima facie case of discrimination, a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern. Once it is thus shown that the employment standards are discriminatory in effect, the employer must meet 'the burden of showing that any given requirement [has] . . . a manifest relationship to the employment in question.' *Griggs v. Duke Power Co.*, *supra* [401 U.S.] at 432 [91 S.Ct. at 854]. If the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect would also 'serve the employer's legitimate interest in efficient and trustworthy workmanship.' *Albemarle Paper Co. v. Moody*, *supra [422 U.S.] at 425 [95 S.Ct. at 2375], quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801 [93 S.Ct. 1817, 1823, 36 L.Ed. 668]."*

(Footnotes omitted). (Emphasis added.)

We believe that on the facts of this case, the plaintiff has met the standard underlined above.

As to all of the other issues in this case, we affirm the judgment of the District Court for the reasons set forth in Judge Feikens' opinion, except of course for the attorneys' fee issue to which we have already referred.

■ This issue is referred back to the District Court for further consideration under the standards of *Northcross v. Board of Education of the City of Memphis Schools*, 611 F.2d 624 (6th Cir. 1979). In *Northcross*,

Senior Judge Peck has written comprehensively upon standards for establishing reasonable attorneys' fees. Since the District Judge did not have this opinion before him, we think it appropriate to remand for reconsideration of the attorney fee issue under the standards established in *Northcross*.

We note the District Court conclusion, "the court finds that this case was not sufficiently difficult and complicated to warrant the expenditure of all hours claimed." The *Northcross* opinion specifically permits the District Judge to eliminate duplicative hours billed and it also sets standards for determining a reasonable rate based on the experience of the attorneys involved and the fee levels customarily charged in the jurisdiction where the case was tried. *Northcross* does not forbid the reduction of an excessive fee claim. It does provide a standard for making the determination.

For the reasons outlined above, the judgment of the District Court is affirmed in all respects except as to attorney fees and that issue is remanded for further consideration as noted above.