**Judy JONES, Plaintiff,**

v.

**FEDERATED DEPARTMENT STORES, INC., et al., Defendants.**

**No. C–3–79–393.**

United States District Court,
S. D. Ohio, W. D.

Dec. 3, 1981.

Asher Bogin, Dayton, Ohio, for plaintiff.

Warren H. Morse, Columbus, Ohio, for defendants.

## DECISION AND ENTRY ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION IN PART AND OVERRULING SAME IN PART

RICE, District Judge.

This case involves important issues concerning the awarding of attorney's fees and costs to prevailing parties in employment discrimination cases, and the application of the guidelines for awarding such fees and costs set out in *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

Plaintiff filed a sex discrimination suit in this Court against defendants. The case was referred to the United States Magistrate, but the parties ultimately reached a settlement, and a judgment thereto was entered by the Clerk pursuant to Fed.R. Civ.P. 68. The judgment left open the amount of attorney's fees to be awarded to plaintiff. The Magistrate filed a Report, recommending that defendants pay attorney's fees in the amount of $7,193 to plaintiff. Both plaintiff and defendants filed objections to the Report, and this Court now reviews the same pursuant to Fed.R. Civ.P. 53(e)(2). For the reasons set out below, the recommendations of the Magistrate are sustained in part and overruled in part, and defendants are ordered to pay attorney's fees in the amount of $8,069.60 to plaintiff and, in addition to pay to plaintiff the sum of $393.45 as out-of-pocket, pre-settlement costs and expenses.

## I. PROCEDURAL BACKGROUND

Plaintiff was formerly an employee at a Gold Circle store in Dayton, which is owned and operated by the defendant Federated Department Stores. On October 24, 1979, plaintiff filed her complaint in this Court, alleging that Gold Circle and Federated had violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 by, *inter alia*, failing to promote her to the position of department manager as a result of discrimination based on her sex. She properly invoked the jurisdiction of this Court pursuant to 42 U.S.C. § 2000e–5 and 28 U.S.C. §§ 1337, 1343. The case was referred to the United States Magistrate under 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 53.[1]

After a lengthy and sometimes contentious period of discovery, the case was set to go to trial in October of 1980. On June 6, 1980, defendants tendered an offer of judgment pursuant to Fed.R.Civ.P. 68. The offer was for $4,500, inclusive of interest, plus costs accrued through the date of the offer. Plaintiff accepted the offer on June 10, with the understanding that the costs accrued through June 6 were to include a reasonable amount of attorney's fees, to be subsequently determined by the Court. An Entry of Judgment was filed on June 19, 1980, containing plaintiff's understanding of the offer. The parties filed briefs and the Magistrate held a hearing and received evidence with respect to the amount of attorney's fees.

---

1. Since the case was apparently intended to go to trial before the magistrate, the proper citation in the Order of Reference should have been to 28 U.S.C. § 636(b)(2), not § 636(b)(1)(B). However, by having failed to raise the issue at any time in these proceedings, the parties have waived objections to the referral and the subsequent actions of the magistrate. *See Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981). The referral will be treated by this Court as if it had been made under § 636(b)(2).

Plaintiff's counsel claimed that they were entitled to receive $26,109.37 as attorneys' fees. Counsel arrived at this figure by claiming out-of-pocket expenses of $393.45, and hourly fees in the amounts of $75, $60, and $25, for the work on the case by Asher Bogin, Mike Fain, and a third-year law student, respectively. Using these figures, counsel requested total fees of $12,413.45 for work performed through June 6, 1980 (the offer of judgment date), and claimed an additional $4,992.80 for work performed on the issue of attorneys' fees from June 18 to September 5, 1980. These combined figures yielded a total of $17,406.25. In addition, they argued that the award should be increased by a multiplier of 50%, to reflect the high quality of legal services rendered and the risk of nonrecovery of any fees, due to counsel having taken plaintiff's case on a contingent fee basis. A 50% multiplier would result in a total award of $26,109.37.

In considering Plaintiff's request in this Report, the Magistrate applied both the attorney's fee provision of Title VII, 42 U.S.C. § 2000e–5(k), which states that a court may allow a prevailing party[2] "reasonable" fees, *and* the guidelines in *Northcross*, which interpret what is "reasonable."[3] The Magistrate considerably reduced the figure recommended by Plaintiff's counsel. First, he differentiated the type of work performed by counsel, allocating 70.5 hours to ministerial tasks (at $25 per hour), 84.4 hours to legal research (at $55 per hour), and 17.5 hours to the work of the third-year law student (at $5 per hour). These calculations yielded a total of $6,492 for counsel's work through June 6, 1980. The Magistrate did not apply a multiplier to this figure, but did grant a total of $1,500 for work performed after June 6 in connection with the attor-

neys' fee award. The combined total of $7,992 was reduced by 10%, based on two "frivolous" positions advanced by plaintiff: the count in the complaint grounded on § 1981, ultimately dismissed by this Court, and a motion to compel discovery in May of 1980. With the 10% reduction, the ultimate award recommended by the Magistrate was $7,193.

Both the plaintiff and the defendants duly filed motions to review the Magistrate's Report and Recommended Decision, and extensively briefed the matter for this Court.

## II. MOTIONS TO REVIEW THE MAGISTRATE'S REPORT

In a case referred to a magistrate under 28 U.S.C. § 636(b) and Rule 53, a magistrate's findings of fact in a Report shall be accepted by a reviewing court unless they are "clearly erroneous." Fed.R. Civ.P. 53(e)(2). A court can exercise its independent judgment, however, with respect to the Magistrate's legal conclusions. *Harden v. Dayton Human Rehabilitation Center*, 520 F.Supp. 769, 771 (S.D.Ohio 1981). With these standards in mind, the Court now turns toward the objections to the Magistrate's Report advanced by plaintiff and by the defendants.

### A. PLAINTIFF'S OBJECTIONS TO THE REPORT

### 1. APPLICATION OF AN UPWARD ADJUSTMENT

As noted above, the Magistrate refused to apply a multiplier, or adjust upward the hourly rate of plaintiff's counsel to reflect the contingent nature of recovery or other factors. The Magistrate discussed the ra-

---

2. There is no question that parties who settle, as plaintiff herein, can be considered a "prevailing party" under the statute, *see Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *Northcross, supra*, 611 F.2d at 633, and Defendants do not contend otherwise.

3. *Northcross* and other cases discussed in this opinion actually interpreted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Given the virtually identical language

of § 2000e–5(k) and § 1988, courts have treated the two provisions interchangeably and an interpretation of one is considered an interpretation of the other. *See, e.g., Roadway Express, Inc. v. Piper*, 447 U.S. 752, 758 n.5, 100 S.Ct. 2455, 2460 n.5, 65 L.Ed.2d 488 (1980); *Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192, 198 n.5 (6th Cir. 1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979). This Court will follow this practice.

tionale behind such upward adjustments and his refusal to apply one in the present case:

> The Court of Appeals for the Sixth Circuit has permitted an hourly rate to be adjusted upward to reflect the risk of accepting a contingency representation. This contingency adjustment is not a percentage increase based on the amount of recovery. It reflects both the risk that no fee will be obtained as well as the delay in receipt of the fee. For example, in a complicated school desegregation case which resulted in trial and appeal, an upward adjustment of the hourly rate of 10% was permitted. *Northcross v. Board of Education of Memphis City Schools, supra.*

> Our experience with employment discrimination cases in this district for several years reveals that some plaintiffs encounter difficulty in obtaining adequate representation in such cases. However, we do not believe that an upward adjustment is appropriate in the instant case, where Plaintiff did not succeed on the merits, the legal issues were not complicated, and there was neither a trial nor an appeal.

Magistrate's Report at 4.

Plaintiff vigorously argues that this conclusion by the Magistrate both improperly interprets *Northcross* and improperly applies *Northcross* to the facts of this case. While the Magistrate did *not* misinterpret *Northcross* in this particular instance or in the Report generally, this Court nevertheless must agree with plaintiff that *some* upward adjustment in the hourly rate is appropriate in the present case.

In *Northcross,* the Sixth Circuit discussed at some length the rationale for adjusting upward the hourly rate to make an award "reasonable" under the attorney's fees statutes:

> Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact that the award is contingent upon success. An attorney's regular hourly billing is based upon an expecta-

tion of payment, win, lose or draw. If he or she will only be paid in the event of victory, those rates will be adjusted upward to compensate for the risk the attorney is accepting of not being paid at all. Some cases under the civil rights statutes, those in which the facts are strong and the law clear, pose little risk of losing, and the attorney's normal billing rate will be adequate compensation. Others, in developing areas of law or where the facts are strongly disputed, will require a substantial upward adjustment to compensate for the risk. We also note that in a long and complicated lawsuit such as this one, only a portion of the time expended can be reasonably regarded as contingent; once liability is established the attorney is assured of compensation for establishing the appropriate remedy, monitoring the decree, and recovering his fee. The contingency factor is not a "bonus" but is part of the reasonable compensation to which a prevailing party's attorneys is entitled under § 1988.

*Northcross, supra,* 611 F.2d at 638.

In the conclusion to its opinion, the *Northcross* Court summarized in this way:

> Adjustments upward may be made to reflect the contingency of the fee, unusual time limitations and the "undesirability" of the case.

*Id.* at 643.

■ Hence, a careful reading of *Northcross* reveals that the contingent nature of the case, that is, the risk of not being paid at all, and the undesirability in terms of the difficulty of potential plaintiffs in finding competent counsel are the main factors to be considered by a court in deciding whether to increase hourly rates. The complexity of a case, the ultimate relief obtained, and whether there was a trial and appeal are surely relevant factors in determining the fee award as a whole, but are subordinate to the interrelated criteria of contingency of being paid and undesirability. This conclusion is lent force by the facts and result in *Northcross* itself, where the court permitted only a 10% upward adjustment, due

to the plaintiff's favorable prospects of obtaining *some* relief once a trial and appeal of the school desegregation litigation had been successfully concluded. 611 F.2d at 641. Again, the court reached this conclusion despite the complexity and longevity of the *Northcross* litigation.

■ Applying this analysis of *Northcross* to the facts of the present case, this Court holds that the factors of contingency and undesirability are sufficiently prevalent in Title VII litigation in general and in this case in particular to justify some upward adjustment.

This Court certainly agrees with the Magistrate's conclusion that, at least in this district, some Title VII "plaintiffs encounter difficulty in obtaining adequate representation" for their cases. Report at 4. Attorneys undoubtedly view taking Title VII cases as undesirable due to, among other things, the limited financial resources of plaintiffs, the greater resources of most defendants, and, of course, the contingent nature of any attorney's fees. In addition to the contingent prospect of receiving any fees at all, Plaintiff's counsel *will* be faced with significant costs in the pre-trial preparation of these cases. Such costs, associated with all forms of pre-trial discovery, engaged in by *both* Plaintiff and Defendant (the taking of depositions, the serving of interrogatories and requests for the production of documents, the copying of exhibits, etc.) will be completely non-recoverable by a Plaintiff's counsel if his client does not prevail in the litigation. Discovery in these cases is rarely a simple and straightforward process. These cases are traditionally factually complex, requiring a Plaintiff's attorney to conduct voluminous, time consuming and costly discovery in his client's behalf and to participate in what often turns out to be equally voluminous, time consuming and costly discovery initiated by the Defendant. The factor of potentially non-recoverable pre-trial costs in a significant amount, even more than the contingent nature of an attorney fee, can serve to deter counsel from representing potential Title VII plaintiffs on a contingent fee basis.

Indeed, Congress was concerned with these very barriers when it enacted the attorney's fees statutes to aid plaintiffs in bringing meritorious Title VII actions, by permitting counsel of prevailing parties to obtain attorney's fees and out-of-pocket expenses. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 63, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978). While any award of attorney's fees or costs to counsel of plaintiffs who settle must be evaluated in the context of an offer of judgment filed pursuant to Rule 68, courts have interpreted Congress' concerns with overcoming barriers that deter counsel from accepting Title VII cases, to permit awarding such fees or costs, even when the settlement is less than the fee award (as herein), or when the settlement provides no monetary relief at all. *Northcross, supra,* 611 F.2d at 642–43; *Cantor v. Detroit Edison Co.,* 86 F.R.D. 752, 760 (E.D.Mich.1980). The defendant's assertion that the protracted nature of Title VII litigation will "generally" induce defendants to reach settlements is something of an overstatement and is belied by the defendant's own vigorous defense in the present case.

The contingent nature of the present case is somewhat easier to quantify than the "undesirability" of Title VII actions in general. While plaintiff's counsel did take her case on a contingency fee basis, Mr. Bogin, her trial counsel, candidly admitted at the hearing before the Magistrate that he thought the chance of success was about two out of three, or somewhat better than even when the complaint was filed. Transcript of Hearing at 16. Thus, this case falls between the two hypotheticals posited in *Northcross.* That is, it falls somewhere on the continuum between a case where the "facts are strong and the law clear," with "little risk of losing," to a case where the law is "developing" and the "facts are strongly disputed." 611 F.2d at 638.

■ Courts which have held that upward adjustments were appropriate in Title VII cases have applied increases of from 10% to

50%. *See, e.g., DiSalvo v. Chamber of Commerce,* 568 F.2d 593 (8th Cir. 1978) (25%); *Aumiller v. University of Delaware,* 455 F.Supp. 676 (D.Del.1978), *aff'd without opinion,* 594 F.2d 854 (3d Cir. 1979) (50%); *Underhill v. Refined Metals Corp.,* 26 FEP 947 (W.D.Tenn.1979) (10%); *see generally* Berger, *Court Awarded Attorneys' Fees: What is "Reasonable?",* 126 U.Pa.L.Rev. 281, 324–26 (1977). Such cases are of little aid for comparison or precedential value, since each award will turn largely on the facts of the particular case. However, based on the Congressional policy underlying the attorney's fees statutes, the undesirability of Title VII litigation in general, the contingent factors in the case at bar, and upon a careful review of the record and arguments of the parties, this Court holds that a 20% upward adjustment is appropriate in this case, in that, adjusting the hourly fee upward by 20% will reflect counsel's risk of not being paid at all, or of not receiving any pre-trial preparation costs, when counsel were initially retained by the Plaintiff for the litigation herein.

In short, the Court agrees with the Magistrate that representing Title VII plaintiffs is not always desirable, but disagrees that the complexity of the case, the relief obtained, and the presence of a trial or appeal suggest that there should be no upward adjustment. To the extent that these latter factors are relevant to a decision not to upwardly adjust, they are overridden in this case by the risk of not being paid and by the undesirability factors.

### 2. SECTION 1981 CLAIM WAS FRIVOLOUS

■ The Magistrate reduced plaintiff's fee by 10%, in part because he found that her § 1981 claim was frivolous and not meritorious. *Northcross* expressly held that hours "may be cut for duplication, padding or frivolous claims." 611 F.2d at 636.

The Magistrate was clearly correct on this point. When the present case was instituted in this Court, there was substantial authority from the Supreme Court and within this Circuit that § 1981 only provided relief for discrimination on the basis of race, not sex. *Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 2592, 49 L.Ed.2d 415 (1976); *Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir. 1974); *Mills v. National Distillers Products Co.,* 435 F.Supp. 72 (S.D.Ohio 1977). Indeed, the plain language of § 1981 compels this result. Plaintiff rather lamely argues that even with caselaw to the contrary, a dismissal of the § 1981 count could have been appealed, perhaps successfully, to the Sixth Circuit or the Supreme Court. Under this view, there would never be any certainty in the law. Plaintiff's argument is without merit on this point.

### 3. MOTION TO COMPEL DISCOVERY WAS FRIVOLOUS

The Magistrate also reduced plaintiff's fee due to her frivolous motions to compel discovery in May, pointing out that the motion was without citation of authority and was filed before the defendants' time to respond to the discovery request had expired. Report at 5. Again, a review of the record in this case shows the Magistrate to be correct.

Plaintiff correctly argues that Fed.R. Civ.P. 37(a) places no limit on when a motion to compel discovery may be filed, *see* 4A Moore's *Federal Practice* ¶ 37.02[6] at 37–42 (2d ed. 1981), and that citation of authority is not necessarily required or useful. However, plaintiff's motion must be evaluated in the context of the discussions between plaintiff and defendants concerning discovery. Defendants point out, and plaintiff does not contend otherwise, that the parties had agreed by a phone conversation of May 5, 1980, that defendants had until May 12 to respond to plaintiff's interrogatories. Plaintiff mailed defendants a letter on May 7 memorizing the phone conversation, and the letter was received on May 9, three days before the deadline. Viewed in this light, the failure to wait three days to await defendants' response is inexcusable. Had defendants responded inadequately, or not responded at all, on May 12, plaintiff could have asked the Magistrate to impose appropriate sanctions on defendants pursuant to Rule 37(b). The Magistrate correctly concluded that the filing of the motion was a frivolous act.

Furthermore, this Court agrees with the Magistrate that the dismissal of the § 1981 cause of action and the filing of the motion to compel discovery justified a 10% reduction in the ultimate fee awarded to plaintiff.

### 4. HOURLY RATES CAN VARY WITH THE NATURE OF THE LEGAL SERVICES RENDERED

After carefully reviewing the amount of hours and type of work claimed by plaintiff's counsel, the Magistrate determined that 70.5 hours were devoted by counsel to ministerial tasks or tasks other than legal research, and that 84.4 hours were spent on legal research or related tasks. The Magistrate assigned hourly rates of $25 and $55, respectively. Report at 8–9.

Plaintiff argues that only one billing rate with regard to all legal services performed should have been applied, and that the hourly rates that were applied were insufficient compensation in this particular case and to attract competent counsel in Title VII litigation in general.

This Court cannot agree with plaintiff with respect to the first objection. Under *Northcross*, it is permissible for a court to vary an hourly rate depending on the type of service being provided. 611 F.2d at 638. The court suggested that "in-office services by experienced attorneys and trial services" were appropriate categories to use. *Id.* Based on the Magistrate's use of these guidelines, and his careful review of the record and the evidence on services provided by plaintiff's counsel, this Court cannot hold that his findings were in error. However, this Court shares plaintiff's concerns regarding the hourly rate actually applied by the Magistrate, and cannot agree with him on this point. Unfortunately, the only evidence in the record regarding hourly rates in Title VII cases in this area was by Ira Rubin, a Dayton attorney called by plaintiff's counsel to testify at the August 12, 1980, hearing. Mr. Rubin testified that

it was his opinion that the rates sought by Messrs. Bogin and Fain ($75 and $60 respectively) were "in line" with and, in fact, slightly lower than the rates charged by attorneys with comparable experience. Transcript of Hearing at 4–5.

The Magistrate did not accept these rates, instead opting for the lower rates indicated above. He reached this decision by considering "the experience and ability of the attorneys, the quality of the legal documents filed with the Court and the nature of the work performed." Report at 9. This Court is cognizant of its duty to reject the Magistrate's findings of fact only when they are "clearly erroneous," that is, when

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Harden, supra,* 520 F.Supp. at 771 (quoting *Agriculture Services Ass'n, Inc. v. Ferry-Morse Seed Co.,* 551 F.2d 1057, 1071 (6th Cir. 1977)). Under *Northcross,* the "rates customarily charged in the community for similar services can be looked to for guidance." 611 F.2d at 638. The Court is of the opinion that the Magistrate committed error when he failed to rely on, or at least distinguish, the *only* evidence in the record (Mr. Rubin's testimony) indicating the "fair market value of the services provided." *Id.* Not only did the Magistrate fail to discuss, rely upon or distinguish Mr. Rubin's testimony, but he failed to discuss and distinguish the figures preferred by the attorneys themselves. Considering the evidence presented in the record and applying the same factors utilized by the Magistrate, this Court holds that an hourly rate for the legal research provided by Bogin and Fain of $65, rather than $55, was appropriate in this case. The Court bases this conclusion particularly on the high quality of legal memoranda preferred by the parties in this case.[4]

---

4. The only exceptions to this generalization are, first, the § 1981 claim advanced by the plaintiff and the motion to compel discovery and, second, the interpretation of *Northcross*

advanced by the defendants. The argument in the defendants' "Memorandum Contra Plaintiff's Application for Attorney's Fees" (doc. 46) can at best be described as an unconvincing

This Court does agree with the determinations of the Magistrate regarding the hourly fee for ministerial tasks and the work of the third-year law student.

### 5. NO AWARD FOR TIME EXPENDED ON ISSUE OF ATTORNEY'S FEES

The Magistrate held that plaintiff's counsel were entitled to $1,500 for their work on attorney's fees, approximately one-third of the amount requested by the counsel. Plaintiff's objection to this part of the decision is without merit, for reason that, under the Entry of Judgment, plaintiff's counsel were not entitled to *any* fees for their work on the attorney's fees issue in this action. This issue will be more fully addressed below.

### B. DEFENDANTS' OBJECTIONS TO THE REPORT

### 1. NO SUBSTANTIAL DUPLICATION OF EFFORT BY PLAINTIFF'S COUNSEL

■ In *Northcross,* the Court held that hours may be cut for "duplication" of work, 611 F.2d at 636. Such cutting may be accomplished by "simply deducting a small percentage of the total hours to eliminate duplication of services," rather than picking "out, here and there, the hours which were duplicative." *Id.* at 637. *See also, Horace v. City of Pontiac,* 624 F.2d 765, 770 (6th Cir. 1980). Despite the fact that two of Plaintiff's attorneys attended most of the deposition sessions in this action, the Magistrate declined to hold that their efforts were duplicative. He particularly noted that it was not an unreasonable practice to have two attorneys present at a deposition. Report at 6.

This Court fully agrees with the Magistrate's position. The protestations of the defendants are especially inapposite in view of the fact that they also had two attorneys present at depositions. Report at 6. *See also Selzer v. Berkowitz,* 477 F.Supp. 686 (E.D.N.Y.1979).

### 2. THE ENTRY OF JUDGMENT PRECLUDES AN AWARD OF FEES FOR WORK ON THE ATTORNEY'S FEES ISSUE

■ As previously noted, the offer of judgment originally submitted by the Defendants covered all costs accrued through the date of the offer. Plaintiff accepted this offer with the understanding that such costs were to include attorney's fees. The Entry of Judgment filed on June 19, 1980, stated that plaintiff was to receive costs accrued through June 6, 1980, including attorney's fees. The latter date would prevent plaintiff's counsel from receiving compensation for work performed after that date, that is, for work on the attorney's fee question. Without referring to these dates, the Magistrate nevertheless granted plaintiff's counsel a portion of their request for such fees. Report at 9. This Court agrees with the defendants that the Magistrate was in error on this point.

While not denying that the Entry of Judgment precludes the awarding of such fees, plaintiff's counsel now argues that the policy of the attorney's fees statutes overrides the terms of a Judgment filed under Rule 68. The only reference in Rule 68 to costs is the statement that the offense can recover "costs then accrued."[5] The parties agreed in the settlement under Rule 68 to

---

effort to suggest that *Northcross* does not fully control the attorney's fees issues in this action. However, this Court does not find that defendants made this argument in bad faith, as suggested by plaintiff.

**5.** Rule 68 in full reads:

At any time more than 10 days before the trial begins, a party defendant against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service

of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one

exclude, as "costs," the awarding of post-settlement fees. Neither party can later back out of this arrangement. Plaintiff must be held to the settlement she made, and courts have uniformly held that settlement agreements under Rule 68 can expressly exclude the awarding of post-settlement fees. *See Rice v. Gates Rubber Co.*, 584 F.2d 135, 136–37 (6th Cir. 1978) (per curiam); *Cantor v. Detroit Edison Co., supra*, 86 F.R.D. at 762–63. In short, "plaintiffs can give up their statutory entitlement to fees as part of the settlement arrangement." *Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 132 (10th Cir. 1980).

Plaintiff's counsel argues that this result imposes an unacceptable dilemma upon them in their decision to accept a settlement offer. They contend that they are forced to (1) accept the offer but lose post-judgment fees (as herein) or (2) reject the offer, win at trial, recover no more than the amount advanced in the offer, and lose, as per Rule 68, the opportunity to recover post-judgment fees. Plaintiff's counsel fail to recognize a *third* scenario: rejecting the offer, winning at trial, and recovering *more* damages than the amount advanced in the offer. Under this alternative, plaintiff could recover fees for work performed on the attorney's fees issue. Thus, plaintiff's "dilemma," in all its versions, will not always preclude the awarding of fees for such work. The "dilemma" is simply one factor plaintiff's counsel must consider in deciding whether to accept an offer.

For these reasons, the amount awarded by the Magistrate for work performed on the attorney's fees issue must be denied.

## C. AWARDING OUT–OF–POCKET EXPENSES

■ In addition, this Court will grant the request of Plaintiff's counsel for out-of-pocket expenses of $393.45 in connection with the pre-settlement legal services. Such expenses are authorized by the attorney's fees statute, apart from the fee award based on hourly rates. *Northcross, supra*, 611 F.2d at 639. It appears that the Magistrate simply did not address the question of awarding such expenses, Report at 8–9, and Plaintiff's counsel only obliquely refers to this question in their objections to the Report. This Court has examined the original request for such expenses (duplicating, telephone charges, and travel expenses in the amount of $309.76, plus other sundry expenses amounting to $83.69), finds them reasonable, and will award them to Plaintiff's counsel.

## III. CONCLUSION

To summarize, the holdings in the Magistrate's Report are accepted in full with three exceptions: an upward adjustment of 20% in the hourly rates will be applied, the hourly rate for the 84.4 hours of legal research will be increased to $65, and the award for post-settlement fees is disallowed.[6] Applying the $65 figure and disallowing the post-settlement fee award yields a total of $7,336. This amount will be adjusted upward by 10% (the 20% upward adjustment minus the 10% deduction for frivolous claims), resulting in an award of $8,069.60. The out-of-pocket expenses noted above will be added to this award. However, similar expenses awarded in *Northcross* were not subject to the upward adjustment, 611 F.2d at 641–43, and were added on to that portion of the award based on the hourly rate. Following the same practice for the case herein, this Court will add $393.45 to the $8,069.60 award based on

party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

Fed.R.Civ.P. 68.

**6.** The Court thus sustains, in part, two of the Plaintiff's objections to the Report (failure to apply an upward adjustment and the hourly legal fees claimed by Plaintiff's counsel), and one of the Defendant's objections to the Report (failure to exclude any award for post-settlement fees). All other objections are overruled.

the hourly fees, yielding a final total of $8,463.05.[7]

Accordingly, for the aforestated reasons, the Report and Recommendation of the Magistrate is adopted in part and overruled in part. It is ordered that a judgment of attorney's fees and out-of-pocket expenses in the amount of $8,463.05 be entered for plaintiff, and that defendants pay the same to the plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Counsel should take note that this Decision is also in the form of a judgment entry. Therefore, the time for prosecuting an appeal to the Sixth Circuit Court of Appeals must be computed from the date upon which this Decision and Entry is filed.

**7.** The computation of the Magistrate and this Court may be summarized as follows:

MAGISTRATE

| | | | |
|---|---|---|---|
| 70.5 hrs./ministerial tasks | @ $25 = | $1,762.50 |
| 84.4 hrs./legal research | @ $55 = | 4,642.00 |
| 17.5 hrs./law student | @ $ 5 = | 87.50 |
| | | $6,492.00 |
| work on attorney's fees | | + 1,500.00 |
| | | $7,992.00 |
| 10% reduction | | − 799.20 |
| Total | | $7,193.00 (rounded) |

THIS COURT

| | | | |
|---|---|---|---|
| 70.5 hrs./ministerial tasks | @ $25 = | $1,762.50 |
| 84.4 hrs./legal research | @ $65 = | 5,486.00 |
| 17.5 hrs./law student | @ $ 5 = | 87.50 |
| | | $7,336.00 |
| 10% upward adjustment | | + 733.60 |
| | | $8,069.60 |
| Out-of-Pocket Expenses | | + 393.45 |
| Total | | $8,463.05 |