700 F.2d 268
 30 Fair Empl.Prac.Cas. 1505,
31 Empl. Prac. Dec. P 33,321
LOUISVILLE BLACK POLICE OFFICERS ORGANIZATION, INC., et al.,
Plaintiffs- Appellants-Cross-Appellees,
v.
CITY OF LOUISVILLE, et al., Defendants-Appellees-Cross-Appellants.
 Nos. 81-5466, 81-5491.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 1, 1982.
Decided Feb. 4, 1983.
 
 1
 Robert A. Sedler (argued), Detroit, Mich., William H. Allison, Jr., Paul Soreff, Juanita Logan Christian, Louisville, Ky., Jack Greenberg, Patrick O. Patterson, Clyde E. Murphy (lead counsel), New York City, Patrick O. Patterson, Los Angeles, Cal., for plaintiffs-appellants-cross-appellees.
 
 
 2
 Winston King (argued) Henry Triplett, Louisville, Ky., for defendants-appellees-cross-appellants.
 
 
 3
 Before LIVELY and KENNEDY, Circuit Judges, and HOLSCHUH, District Judge.*
 
 
 4
 HOLSCHUH, District Judge.
 
 
 5
 This appeal and cross-appeal challenge the district court's award of attorneys' fees following plaintiffs' successful challenge of the discriminatory employment practices of the City of Louisville Police Department. The issues raised on this appeal result, for the most part, from a misreading of this Court's decision in Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), and from a failure to recognize that Northcross did not eliminate all discretion on the part of district courts in awarding attorneys' fees in civil rights litigation. For the reasons set forth below, we hold that in its award of attorneys' fees in the present case the district court properly exercised its discretion within the guidelines of Northcross. We therefore AFFIRM.
 
 I.
 
 6
 The underlying class action discrimination suit was brought initially under 42 U.S.C. Secs. 1981 and 1983, alleging that the City of Louisville Police Department had violated the Fourteenth Amendment rights of the plaintiffs. The complaint was later amended to allege claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq. On March 7, 1977, trial commenced in the district court on the issues of recruitment, entry-level testing, selection and hiring. The case, tried in stages, took five weeks of trial time. After the final transcript of the proceedings was completed and filed in May 1978 the parties jointly requested and the district court granted additional time for filing post-trial briefs in order that settlement negotiations could take place. The negotiations were unsuccessful, and in September 1978 counsel for plaintiffs filed their post-trial brief and proposed findings of fact and conclusions of law. The defendants then filed their post-trial brief in February 1979, and plaintiffs filed their post-trial reply brief in May 1979.
 
 
 7
 On September 18, 1979, the district court issued findings of fact, conclusions of law, and a memorandum opinion, finding, inter alia, that the City had a history of racial segregation and discrimination in its police employment practices. The court entered a preliminary injunction with respect to the hiring of black police officers by the defendants. In addition, the district court held that counsel for plaintiffs were entitled to recover interim attorneys' fees, costs and expenses. On May 2, 1980, the parties signed a consent decree which substantially incorporated the remedies set out in the court's preliminary injunction. However, the decree, which was approved by the court, did not resolve the question of interim attorneys' fees, costs and expenses, and the parties were unable to reach any agreement regarding this matter.
 
 
 8
 The plaintiffs then moved for an award of attorneys' fees in the amount of $629,182. In support of the motion, plaintiffs' counsel submitted detailed time logs, affidavits of Louisville attorneys regarding prevailing hourly rates for attorneys practicing in the Louisville area, and a summary of the experience and qualifications of the attorneys who participated in the litigation. In addition to submitting the number of hours each attorney spent on the case, plaintiffs also submitted hourly rates for each of the attorneys computed on the basis of each attorney's years of experience at the time the services were rendered. Different rates were proposed for in-court as opposed to office time.
 
 
 9
 The attorneys for whom fees were claimed are as follows: The principal attorney for the plaintiffs at the time the suit was filed in 1974 was William Allison of Louisville. In 1974-75 he was assisted by Henry Hinton of Louisville. Paul Soreff, who first became involved in the case in 1975 while still a law student, joined Mr. Allison in this case in 1976 when he was admitted to practice. After being denied assistance in litigating the case by the United States Department of Justice, attorneys Allison and Soreff asked the NAACP Legal Defense Fund to assist them. The Legal Defense Fund (LDF) agreed to participate, and LDF attorneys entered the case as counsel for plaintiffs in 1976. Patrick O. Patterson was the primary LDF attorney assigned to the case. He was assisted by Deborah M. Greenberg in 1977, by Kristine S. Knaplund, a volunteer LDF attorney, and by paralegals and other members of the LDF staff. Juanita Logan Christian performed services for plaintiffs while serving as an Earl Warren Fellow at the LDF in 1977 and then served as additional counsel for plaintiff when she entered private practice in Louisville. Frederic Cowden of Louisville also performed some work in 1977.
 
 
 10
 The City of Louisville challenged the application for attorneys' fees, contending that plaintiffs' attorneys were entitled to recover no more than $136,336 as interim attorneys' fees and submitting affidavits of other Louisville attorneys on the question of prevailing rates for legal services in the Louisville area in support of the City's contention.
 
 
 11
 On February 12, 1981, the district court issued its findings of fact, conclusions of law and memorandum opinion on plaintiffs' motion for attorneys' fees, costs and expenses and entered a judgment thereon. On March 17, 1981, the district court issued a memorandum opinion clarifying its judgment. The court's second opinion set forth in detail the computations it used in calculating the awards. In this Court's review of the district court's decision, the two opinions will be treated as one.
 
 
 12
 The district court's computation of fees consisted of three principal elements: (1) a determination of the number of hours to be compensated, (2) a determination of a reasonable dollar compensation for those hours, and (3) the addition of a 33.33% contingency factor to the product of the first two. In determining the number of hours to be compensated, the court accepted the hours submitted by the applicants but made the following adjustments. The court concluded that the time sought to be approved for preparing the plaintiffs' post-trial brief (327.90 hours) was excessive by 25% and that the time sought to be approved for preparing the reply brief (511.15 hours) was excessive by 50%. The court, therefore, reduced by 25% and 50%, respectively, the hours each attorney claimed as having been spent on the post-trial brief or the reply brief. In addition, in accordance with the small percentage reduction to eliminate duplication of services approved in Northcross, the court reduced by 5% all remaining hours.
 
 
 13
 The more difficult task before the district court was the assignment of reasonable hourly rates to the approved hours of service. The court prefaced its determination by noting that neither Northcross nor other authorities provide specific guidance as to the relationship between a lawyer's experience and his or her ability to charge higher rates based on that experience.
 
 
 14
 As to Ms. Greenberg's fee, the court compared her experience and skill to that of Mr. Lucas, one of the attorneys in Northcross, and determined that the hourly rate of $75 per hour for office work and $106 for trial work would adequately compensate Ms. Greenberg who participated in the litigation in 1977 only.
 
 
 15
 As to the fees for Ms. Knaplund and Mr. Cowden, the court found that the $40 per hour rate established for Mr. Cowden in another civil rights action in the same court, Lanier v. City of Louisville, Civil Action No. C77-0455L(A), represented a reasonable fee for both Mr. Cowden and Ms. Knaplund for services rendered in their first two years of practice.
 
 
 16
 With regard to the hourly rates of the other attorneys, the court established three categories. An attorney with zero to two years experience was labeled "inexperienced," one with two to seven years experience was labeled "intermediate," and one with more than seven years experience was labeled "fully experienced." In addition, for all attorneys, the court adopted an increase of roughly 40% over the base rate for work done in the courtroom. Based on this formula and taking into account the affidavits of Louisville attorneys on the issue of prevailing rates, the court determined the following rates would reasonably compensate plaintiffs' attorneys:
 
 
 17
 Admitted Years Service Basic In-Court
Attorney to Practice Rendered Rate Rate
--------- ----------- ------------- ----- ------------
Allison 1969 1974-76 $ 50
 1977-79 $ 65 $ 90
Patterson 1972 1976-79 $ 50 $ 70
Soreff 1976 1975 $ 20*
 1976-78 $ 40 $ 56 (1977)
 1978-79 $ 60
Hinton 1971 1974-75 $ 50
Christian 1977 1977 $ 20*
 1977-79 $ 40 $ 56
Knaplund 1977 1978-79 $ 40
Cowden 1975 1977 $ 40
Greenberg 1957 1977 $ 75 $106
* before admission to bar
 
 
 18
 Finally, as noted earlier, after computing a total based on the number of approved hours multiplied by the appropriate hourly rate, the court adopted a contingency factor of 33.33% to increase by that percentage the total fee to be awarded each attorney. The court denied plaintiffs' request for an additional increase of fees based on inflation. Based on the above formula, the following fees were then awarded:
 
 
 19
 Paul Soreff $72,132.17
William Allison 46,503.51
Patrick Patterson 89,891.09
Deborah Greenberg 17,178.93
Juanita Christian 10,877.60
Christine Knaplund 6,098.27
Henry Hinton 3,093.20
Frederic Cowden 1,471.47
Allison, Soreff and Garber 751.00
for paralegals
Allison, Soreff and Garber 3,852.40
for Paul Soreff's services as
law student
NAACP Legal Defense 4,422.25
Fund for Juanita
Christian's services as law
student
 
 
 20
 The court also awarded plaintiffs their full claim for costs and expenses in the amount of $23,468.03.
 
 
 21
 On March 30, 1981, plaintiffs' attorneys moved to amend the district court's findings of fact, conclusions of law and memorandum opinion of February 12, 1981, and asked the court to alter and amend its memorandum opinion and final judgment entered March 17, 1981. The district court denied the motion in a memorandum opinion and order filed June 3, 1981. On June 19, 1981, the plaintiffs and their attorneys perfected this appeal from the awards made by the district court. On July 2, 1981, defendants-appellees filed a notice of their appeal on the issue of the contingency fee awarded by the district court.
 
 II.
 
 22
 This case raises several questions regarding the extent of the district courts' discretion in awarding attorneys' fees in civil rights cases after this Court's decision in Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). The Northcross court rejected the "list of factors for consideration" approach first suggested in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), and relied upon by this Court in Monroe v. County Bd. of Education, 505 F.2d 109 (6th Cir.1974), because it did not lead to consistent results or, in many cases, reasonable attorneys' fees. In its stead, this Court promulgated a uniform approach to guide the district courts in making fee awards.
 
 
 23
 The Northcross approach, which is grounded in the number of hours expended on each case, requires the district courts to make clear and adequate findings of fact on the record sufficient to enable an appellate court to intelligently review the award. Northcross sets forth guidelines for awarding a "reasonable fee" with specific factors to be considered in determining the number of hours of service to be compensated as well as a reasonable rate of compensation. It is the effect of these guidelines on the district court's discretion that is at issue in the present appeal. The plaintiffs-appellants assert that the district court erred as a matter of law because it did not follow "rules of law" established by Northcross. Defendants-appellees argue that the Northcross guidelines are discretionary and that an award is to be overturned only upon a finding that the district court abused its discretion.
 
 
 24
 Specifically, the applicants assert that the Northcross approach embodies the following rules of law which the district court must follow: (1) Where an award of fees is made a substantial period of time after services have been rendered, the award must be adjusted for the effects of inflation. (2) A fee award must be based on the fair market value of the particular attorney, and the court must therefore taken into account the "institutional expertise" of the NAACP Legal Defense Fund and the specialized training and experience of LDF attorneys. (3) Documented hours may be reduced only when there is evidence that such hours were not expended in the goodfaith representation of the plaintiffs. (4) A contingency fee must be awarded when there are special circumstances, such as unusual time constraints or an unusually unpopular cause, which affect the market value of the services rendered, or where there is a risk that the plaintiff will not prevail. Essentially, the gravamen of applicants' argument is that Northcross virtually stripped the district courts of any discretion in awarding attorneys' fees and substituted therefor a rigid formula which the district courts are required to use, acting in an administrative, more than judicial, capacity.
 
 
 25
 The applicants' argument is based largely upon a misconception of this Court's decision in Northcross. That decision is not to be interpreted as imposing upon the district courts rigid rules of law. Rather, the Northcross approach is a method for the district courts to use in making fee awards. Although, after Northcross, the district courts' discretion is to be exercised within the framework of the guidelines, all discretion of the trial court was certainly not extinguished by that decision. See e.g., Stewart v. Rhodes, 656 F.2d 1216 (6th Cir.1981), cert. denied, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 851 (1982). This Court recognized then as it does today that the district court judge who presided over a case is in the best position to evaluate the reasonableness of fee requests, both in terms of the number of hours spent and a reasonable hourly rate of compensation. The dual aim of Northcross was to establish some uniformity in the district courts' approach to awarding fees and to require the making of a record sufficient to facilitate meaningful appellate review. It did not establish rules of law to be slavishly applied. Only upon a finding that a district court has refused or failed to recognize the Northcross guidelines or, in applying those guidelines, has abused the discretion left by those guidelines in the district court, will this Court overturn a fee award.
 
 III.
 
 26
 The applicants have challenged three specific aspects of the district court's award in the present case: (1) its treatment of the inflation factor, (2) the hourly rates established for LDF attorneys, and (3) the reduction of documented hours of service. They assert that the district court erred as a matter of law on each of these issues. In addition, the defendants-appellees have cross-appealed, challenging as a violation of the Northcross approach and a possible abuse of discretion the 33.33% contingency factor which the district court included in the award.
 
 A.
 In Northcross, this Court stated that
 
 27
 [a]mong other factors, the district court will be required to consider whether the inflation of the intervening years must be taken into account, or whether the lower rate which prevailed for services at the time they were rendered has been balanced by the long delay which will reduce the purchasing power of the award's dollars in the present marketplace.
 
 
 28
 611 F.2d at 640. Applicants argue that the district court was therefore required to base hourly rates on either the rates prevailing at the time services were rendered and then adjust those rates for inflation, or on the hourly rates currently prevailing at the time of the award.
 
 
 29
 Northcross, however, does not mandatorily require the district court to adjust for inflation in every fee award. Rather, in keeping with the discretionary nature of fee awards, Northcross required only that the district court in that case consider whether the inflation of the intervening years must be taken into account. This is clear from the factual background of Northcross.
 
 
 30
 Northcross was a school desegregation case which was first filed in 1960 and required continuous litigation through 1977. The district court awarded attorneys' fees in 1977 and again in 1978. The 1977 award involved services rendered as early as 1960 for which plaintiffs' attorneys would not be compensated until 1980. This Court remanded that award for further proceedings because there had not been an adequate evidentiary hearing relating to the pre-1971 services and expenses. The district court was directed to consider on remand the impact of the inflation of the intervening years in calculating the new award. However, with regard to the 1978 award, which involved only services rendered in 1977, this Court concluded that the record was adequate to enable this Court to independently assess an appropriate award. In determining the hourly rate to be applied to that award, this Court in 1980 relied upon the affidavits of the attorneys which had been accepted by the district court in 1978, made no adjustment for the inflation of the intervening two years and did not request that the attorneys update the rates they had submitted. Consequently, this Court's statement regarding inflation must be read in the context of the particular facts of Northcross and not as establishing a hard and fast rule to be applied in every case.
 
 
 31
 It is clear in the present case from the district court's memorandum opinions of February 23, 1981, and June 4, 1981, that the district court recognized its authority under Northcross to consider the effect of inflation in its determination of reasonable fees to be awarded. The district court found, however, that the applicants had been "fairly and adequately compensated without the addition of an inflation factor or the use of a present value-based calculation." In support of its conclusion, the district court distinguished the present case from the facts in Northcross. It compared the number of years between the time services were performed and the time of compensation in Northcross with the relatively few number of years involved in the instant case (1974 to 1981). In further support of its conclusion, the court noted that
 
 
 32
 [t]his action was relatively dormant during the years 1974-76, and that great surges of activity took place in the latter years of litigation, and that long periods of time ensued between the trial of the action and the final decision of the Court due, in considerable measure, to the parties' desire for extensions of time in which to file briefs.
 
 
 33
 (District Court's Findings of Fact, Conclusions of Law and Memorandum Opinion, February 12, 1981.) The record supports the district court's finding that the bulk of attorneys' services (83.2%) were rendered in the years 1977-1979. Therefore, for most of the hours claimed, a maximum of four years had elapsed before the district court's award was made, and although the period of delay in the present case is greater than the two-year delay in the Northcross 1978 award for which inflation was not considered, it is far shorter than the enormous delay in the Northcross 1977 award for which this Court directed a consideration of inflation. Certainly nothing in Northcross requires an inflation adjustment of the type demanded by applicants under the circumstances of the present case.
 
 
 34
 Further support for our conclusion that the district court did not abuse its discretion in refusing to directly adjust for inflation can be found in the substantial 33.33% contingency factor awarded by the district court in this case. Although Northcross does not refer to delay in payment as an example of a special circumstance that would support a contingency adjustment, the Court of Appeals for the District of Columbia, which has adopted a fair market value approach similar to the Sixth Circuit approach, has recognized delay as one reason for awarding a contingency fee:
 
 
 35
 Another factor to be considered under the general rubric of "contingency" adjustments is that delay in the receipt of fees may warrant an increase in them.
 
 
 36
 Copeland v. Marshall, 641 F.2d 880, 906 n. 61 (D.C.Cir.1980) (en banc ). While it is clear that in a proper case a district court is justified in awarding a contingency factor, without regard to whether there should also be an adjustment for inflation, primarily because of the risk of non-payment often shouldered by plaintiffs' attorneys in this type of litigation, applicants' attempt to isolate each "factor" of an award for purpose of review is misdirected. The guidelines of Northcross are just that--guidelines--and the appellate function is not to dissect and microscopically examine each factor considered by the trial court in isolation from the rest. The overall concern is whether the total award was reasonable and within the proper discretion of the trial court. In making that determination the allowance of a substantial contingency factor by the trial court is a circumstance that is properly considered, even if the explanation for that contingency factor does not specifically include delay in receipt of fees. On the record before the district court, and this Court, we find no abuse of discretion on the part of the district court in its refusal to further increase the substantial fees awarded by adding still another percentage as an inflation factor.
 
 B.
 
 37
 Applicants further claim that the district court erred as a matter of law in basing hourly rates of the LDF attorneys on the prevailing rates for Louisville, Kentucky. This argument has two components: (1) that the Legal Defense Fund has acquired an institutional expertise in civil rights cases that makes the time of its attorneys more valuable than the time of most private attorneys providing representation in such cases; (2) that the value of the services of those attorneys should be based on a national market rather than on a local market. We will address each of these claims separately.
 
 1. Institutional Expertise
 
 38
 Applicants argue that by computing the fee award for the LDF attorneys on the basis of prevailing hourly rates for attorneys practicing in Louisville, the district court erroneously ignored the fact that LDF attorneys worked for an organization with a "corporate reputation for expertness in presenting and arguing the difficult questions of law that frequently arise in civil rights litigation" [citing NAACP v. Button, 371 U.S. 415, 422, 83 S.Ct. 328, 332, 9 L.Ed.2d 405 (1963) ]. They note the special training and experience in civil rights litigation received by Ms. Greenberg and Mr. Patterson as LDF attorneys as well as the fact that they are both highly qualified and experienced specialists in litigating employment discrimination cases. They also note the institutional expertise and resources of the Fund itself and claim that because the award goes to the LDF itself, the district court must compensate the total services provided by the Fund, including its institutional expertise and resources.
 
 
 39
 This Court does not dispute the excellent reputation of the Legal Defense Fund. In Northcross it was specifically noted that the LDF attorneys' "intimate familiarity with the issues involved in desegregation litigation undoubtedly meant that their time was far more productive in this area than would be that of a local attorney with less expertise." 611 F.2d at 637. However, we agree with the district court that nothing in Northcross requires that attorneys associated with a particular organization be accorded fees higher than their other qualifications would warrant on the assumption that their employment by that organization presumptively makes them superior to other attorneys who specialize in the same area of law.
 
 
 40
 On the subject of compensation for institutional attorneys, Northcross specifically provides that "[f]or those attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance." 611 F.2d at 638. However, in keeping with the discretionary nature of fee awards, we did not require the district court to look only to such rates. In fact, there is nothing in Northcross to prevent a district judge from adjusting a fee upward or downward to reflect the quality of representation. See Copeland v. Marshall, supra. Likewise, there is nothing in Northcross or any of this Court's subsequent opinions which requires such an adjustment. We defer to the district court's judgment on such matters because, unlike an appellate court which is not well situated to assess the quality of counsel, the district court judge closely monitors the litigation on a day-to-day basis and is in close contact with counsel. The record indicates that the district judge followed Northcross in looking to the local rates as guidance for setting hourly rates. In doing so, he acted well within his discretion, and his decision, therefore, will not be reversed.
 
 
 41
 2. The Appropriate "Community"
 
 
 42
 Applicants further assert that the hourly rate established for the LDF attorneys is erroneous as a matter of law because the district court looked to a "local market" rather than to a "national market" in determining the value of their services. In support of this argument, applicants cite the Congressional directive that the amount of fees is to be governed "by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." Northcross, 611 F.2d at 633, quoting S.Rep. No. 94-1011, 94th Cong., 2d Sess. 6 (1976) U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913. They draw an analogy between LDF attorneys who represent civil rights plaintiffs on a nationwide basis and national law firms which successfully represent plaintiffs in antitrust and securities actions and argue that because the latter are not expected to discount the value of their services in accordance with prevailing local rates, LDF attorneys, likewise, should not be compensated at local rates.
 
 
 43
 This Court recognizes that institutional attorneys are to be treated no differently than private attorneys simply because the former may be salaried at a lower rate. The fair market value of services is the proper standard for both. However, there are practical differences in determining reasonable rates for the two groups.
 
 
 44
 As was pointed out in Northcross, the marketplace normally sets a value for a private attorney's services: "The hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." 611 F.2d at 638. The LDF attorneys in the present case cannot offer such a marketplace determination of their rates. Although they presented the district court with an affidavit describing reasonable rates for attorneys practicing in New York City, the location of the LDF offices, there is no evidence that the New York rate is the fair market value of their services as individual attorneys. New York City happens to be the geographical location of the headquarters of the LDF, but the location of an attorney's office is not necessarily a measure of the fair market value of that attorney's services where, as here, the attorney has not practiced as a private attorney at that location to the extent the marketplace has established his or her value. LDF's choice of New York City as a headquarters site should no more require the application of New York City rates than would Oswego, New York, rates automatically be required if the LDF should decide for some reason to relocate its headquarters in that city.
 
 
 45
 This is not a case in which a private out-of-town practicing attorney has been called in to try a case. In such a situation, the court would be justified in looking to his or her standard rate in the community where that attorney normally practices as a reflection of that attorney's training, background, expertise and skill. However, for non-private attorneys such as the LDF attorneys, Northcross offered an alternative method of determining the proper rate--that "rates customarily charged in the community for similar services ... be looked to for guidance." 611 F.2d at 638. In Horace v. City of Pontiac, 624 F.2d 765, 770 (6th Cir.1980), this Court suggested that the community to be looked to was "the jurisdiction where the case was tried." That is precisely what the district court did in this case. We therefore hold that in so doing it did not abuse its discretion.
 
 
 46
 Today's holding is not to be interpreted as requiring district courts to always base the fees awarded non-private attorneys on local rates. District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases. See, e.g., Chrapliwy v. Uniroyal, Inc., 670 F.2d 760 (7th Cir.1982), petition for cert. filed 50 U.S.L.W. 3949 (May 19, 1982). Northcross and Horace offered the local market approach as an acceptable approach to determining rates of compensation. However, we reiterate today that the district courts retain their discretion in such matters constrained only by their duty to achieve the goal enunciated in Northcross: "to make an award of fees which is 'adequate to attract competent counsel, but which do not produce windfalls to attorneys.' " 611 F.2d at 633. Focusing on the fair market value of the attorney's services will best achieve that goal, and the district court judge is clearly in the best position to determine that value.
 
 C.
 
 47
 Applicants' final ground for appeal is that the district court erred as a matter of law in reducing by 25% the hours claimed for preparation of plaintiffs' post-trial brief and by 50% the hours claimed for preparation of their post-trial reply brief. They do not here challenge the district court's across-the-board reduction of 5% of all hours claimed, conceding that such a reduction for duplication was within the district court's discretion. Applicants contend that Northcross requires that attorneys for successful plaintiffs in civil rights cases be compensated for all the documented hours spent in the good faith representation of their clients, and that consequently the district court retains no discretion to reduce documented hours which in its opinion are not reasonably expended in the representation of the plaintiffs. Applicants assert that the district court's authority to reduce hours was strictly limited to the reasons stated in Northcross--"hours may be cut for duplication, padding or frivolous claims." 611 F.2d at 636.
 
 
 48
 By focusing on this single statement, taken out of context, applicants have misinterpreted the meaning of Northcross. It is clear from the language and the facts of Northcross that this Court did not divest the district courts of their discretion in assessing the number of hours to be compensated. After concluding in Northcross that a fee calculated in terms of hours of service provided the fairest and most manageable approach to calculating a reasonable fee, this Court directed that,
 
 
 49
 [t]he district court should indicate on the record the number of hours it finds the plaintiffs' attorneys have expended on the case .... The hours claimed need not be automatically accepted by the district court, but to the extent that hours are rejected, the court must indicate some reason for its action, so that we may determine whether the court properly exercised its discretion or made an error of law in its conclusion.
 
 
 50
 611 F.2d at 636 (emphasis added). This Court's review of the Northcross district court's reduction of hours further illustrates the proper standard of review of a district court's reduction of documented hours. Because the district court in that case had simply eliminated, without comment, hundreds of hours of documented service, the 1977 award was remanded for entry of findings of fact adequate to permit review. The wholesale exclusion by the district court of all hours of service rendered by LDF attorneys was reviewed under an abuse of discretion standard. This Court found there was such abuse under the circumstances of that case.
 
 
 51
 The lesson of Northcross is not that this Court has established fixed rules of law regarding a district court's reduction of documented hours. Rather, the aim of the Northcross Court was to provide the district courts with an analytical approach to the difficult task of determining compensable hours, an approach which would be fully reviewable by this Court. The guidelines of Northcross are nothing more than that--they are not inflexible rules or rigid requirements for decision-making. Accordingly, the district court's determination of hours in the present case shall be reviewed on two levels: (1) Did the district court adequately document which hours it was excluding and its reasons therefor? (2) Did the district court abuse its discretion in so reducing the number of hours claimed?
 
 
 52
 We believe that the district court judge sufficiently complied with the procedural requirement of Northcross. In the findings of fact, conclusions of law and memorandum opinion filed February 12, 1981, the trial judge accepted as accurate the hours claimed by the applicants and then reduced by a specific number the hours claimed for specific services (25% of hours claimed for the post-trial brief and 50% of hours claimed for the reply brief). The district court also set forth as the reason for the reduction in hours its conclusion that the time claimed by applicants was "excessive." Although a more specific finding on the excessiveness of the hours would have been preferable, the percentage by which the hours were reduced was clearly justified by the manifest excessiveness of the claimed 42 eight-hour days to prepare the post-trial brief and 68 eight-hour days to prepare the reply brief, especially in light of the fact that the district court had allowed all hours claimed for reviewing transcripts preparatory to writing the briefs.
 
 
 53
 Furthermore, the judge's conclusion in this regard cannot be termed arbitrary, for he expressly took into account the complexity of the issues in the case and the fact that the defendants had filed "a lengthy and exhaustive brief, findings of fact and conclusions of law." (Opinion of February 12, 1981). The district judge also cited case authority in support of his conclusion. (Anderson v. Redman, 474 F.Supp. 511 (D.C.Del.1979)).
 
 
 54
 The district court's decision, therefore, is fully reviewable by this Court. There is no question that the district judge was in the best position to evaluate the reasonableness of the time claimed for plaintiffs' briefs in terms of both their quality and the difficulty of the issues they addressed. We find that the reduction of hours was neither arbitrary nor conclusory, and there is nothing on the record to indicate that the court's refusal to award those hours was an abuse of discretion. We therefore affirm that aspect of the district court's award.
 
 D.
 
 55
 The final issue before this Court is the propriety of the district court's upward adjustment of the base fee by a 33.33% contingency factor. This issue was raised on cross-appeal by the defendants-appellees who assert that the district court's failure to articulate its reasons for using a contingency factor rendered the award unreviewable. Furthermore, they assert that this is not a case in which a contingency adjustment would be appropriate as contemplated by the Northcross Court. In response, applicants argue that the inclusion of a contingency adjustment is not a matter of discretion but is required in two situations, both of which are present in this case.
 
 
 56
 In Northcross, this Court approved the upward adjustment of fees by a contingency factor when the routine hourly rate would not otherwise be "reasonable." 611 F.2d at 638. This Court emphasized that a contingency factor was not to be used as a "bonus," but as "part of the reasonable compensation to which a prevailing party's attorney is entitled under Sec. 1988." Id. By way of example, two reasons were stated why a routine award might not be reasonable: (1) when the case involved "special circumstances, such as unusual time constraint, or an unusually unpopular cause, which affect the market value of the services," and (2) when there was a substantial risk of losing the case, because it involved developing areas of law or strongly disputed facts. Id.
 
 
 57
 Both parties have misinterpreted this aspect of Northcross. Although this Court did suggest circumstances which would warrant a contingency adjustment, it was not intended to thereby limit the reasons a district court might rely upon in making such an adjustment, nor did this Court intend to require district courts to so adjust whenever the circumstances referred to in that decision exist in a particular case. As is true of the other factors discussed above, the decision to make a contingency adjustment is within the sound discretion of the district court, limited only by the requirement that the fee award be reasonable.
 
 
 58
 We agree with defendant that the district court made no findings as to whether there existed circumstances sufficient to warrant a contingency adjustment. In Northcross this Court did not specifically require the district courts to enter upon the record their findings in support of a contingency adjustment, but in keeping with the overall thrust of Northcross, it is our opinion that, with regard to contingency adjustments, "the court's findings and its mode of analysis must be clear to enable an appellate court to intelligently review the award." Northcross, 611 F.2d at 632. The district court's failure to articulate its reasons for the contingency factor in the present case is error and could be a ground for remanding the case for such findings.
 
 
 59
 The requirement of making such a record is to be complied with by the district courts in all fee awards. However, in light of the already protracted nature of the litigation over attorneys' fees in this case we hesitate to prolong the case by remanding it for further findings. The record on appeal is adequate to allow this Court to review the district court's contingency adjustment for an abuse of discretion. Monroe v. County Board of Education, 583 F.2d 263, 265 (6th Cir.1978); Northcross, 611 F.2d at 632. For the reasons that follow, we hold that the circumstances in this case support the 33.33% contingency adjustment awarded by the district court.
 
 
 60
 This Court stated in Northcross that a significant factor which renders a routine hourly fee unusually low is the fact that the award is contingent upon success. We noted that the risk was greatest in cases involving developing areas of law or those in which the facts are strongly disputed. 611 F.2d at 638. Both elements were present in this case, thereby supporting "a substantial upward adjustment to compensate for the risk." Id.
 
 
 61
 Although defendant is correct that the proscription against discrimination in hiring on the basis of race was not disputed at the time this suit was filed in 1974, it cannot be said that the law of employment discrimination was not a developing area of the law at that time. As applicants correctly point out, during the course of the case there were several landmark decisions by the Supreme Court concerning issues relevant to this case--employment testing, proof of intentional discrimination, the use of statistical evidence, the determination of a relevant labor market and the permissibility of race-conscious remedies.[1] Furthermore, we find that the district court's extensive findings of fact filed September 18, 1979, the length of the trial on the issues (five weeks), and the vigorous opposition by the City are all indicative of a case in which the facts were strongly disputed.
 
 
 62
 In addition to these two elements which contributed to the risk of success in this case, we are also persuaded by applicants' argument that the risk of not prevailing was greater in this case than it was in Northcross, in which this Court awarded a 10% contingency adjustment. In the present case, the burden was on the plaintiffs to prove discrimination. In Northcross the defendant school board, not the plaintiffs, had the burden of showing a justification for altering a final desegregation decree. In setting the fees for that aspect of the case (the 1978 Fee Award) this Court made a 10% upward adjustment in the regular billing rate because "there was a real element of contingency as to whether the attorneys would be compensated for their services at all." 611 F.2d at 641. The relatively low 10% figure was considered to be reasonable because "[g]iven that the burden was on the Board, we [did] not believe that there was a very large chance that the plaintiffs would wholly fail to prevail." Id. Plaintiffs in the present case, because they bore the burden of proof, had a greater risk of not prevailing and the consequent risk of non-payment than did the Northcross plaintiffs. Accordingly, we find that the district court acted properly in awarding a contingency adjustment in this case greater than that awarded in Northcross.
 
 
 63
 Furthermore, as noted earlier in this opinion, the district court in the present case did not make any specific adjustments for inflation, finding that the applicants had been "fairly and adequately compensated without the addition of an inflation factor or the use of a present value-based calculation." The district court undoubtedly took into consideration in this regard the 33.33% contingency factor awarded by the court and may have properly concluded that this substantial increase in the fees awarded served also to compensate the applicants for any delay in the receipt of their fees. In determining the reasonableness of the additional 33.33% awarded to the applicants, we examine it in light of the entire amount awarded, and in that connection we take into consideration the fact that no separate percentage increase was made for inflation, a fact which serves to further support the reasonableness of this incremental award.
 
 
 64
 In affirming the district court's refusal to specifically adjust for inflation, we stated earlier in this opinion that, "the overall concern is whether the total award was reasonable and within the proper discretion of the trial court." Guided by that same concern, this Court finds, for the reasons stated, that the district court did not abuse its discretion in awarding the applicants the increase of 33.33% in order to arrive at a total amount representing, as it does, reasonable compensation to the prevailing parties' attorneys in this case.
 
 IV.
 
 65
 For the reasons set forth above, the district court's award of attorneys' fees is AFFIRMED in all respects. Each party shall bear its own costs on this appeal.
 
 
 
 *
 Honorable John D. Holschuh, Judge, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 See, e.g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); Hazelwood School District v. United States, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); Regents of the University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); United Steelworkers of America v. Weber, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979)