974 F.2d 1339
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Neal W. ROLAND, Plaintiff-Appellant,
v.
Perry JOHNSON, Dale Foltz, Bernie Toland, Thomas Phillips,
Defendants-Appellees.
 No. 91-1460.
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1992.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from an order awarding attorney fees under 42 U.S.C. § 1988. The plaintiff obtained a substantial money judgment in a civil rights action brought under 42 U.S.C. § 1983. He subsequently filed a claim for attorney fees and litigation expenses that included expert witness fees. The district court awarded nothing for expenses other than legal fees and substantially less in fees than the amount requested.
 
 
 2
 The plaintiff has appealed, arguing (1) that the district court erred in reducing the hourly rates claimed for attorneys; (2) that the court erred in refusing to award an additional increment for contingency risk; (3) that the court erred in excluding hours billed for a second chair attorney; and (4) that the court erred in refusing to award expenses, including expert witness fees.
 
 
 3
 We find none of the first three arguments persuasive, but we believe that some litigation expenses, exclusive of expert witness fees, ought to have been awarded, and that it was an abuse of discretion not to allow recovery of any such expenses. We shall therefore affirm the attorney fee award and remand the case for further proceedings with respect to the expenses.
 
 
 4
 * The plaintiff, Neal Roland, was a prisoner at the State Prison of Southern Michigan. In the course of his confinement Mr. Roland was raped by a fellow inmate while another inmate stood by as a lookout for the perpetrator. All three were housed together in an "honor block." Mr. Roland brought suit in the United States District Court for the Eastern District of Michigan alleging a violation of his civil rights under 42 U.S.C. § 1983. He claimed that the defendant prison officials violated his rights under the Eighth and the Fourteenth Amendments by subjecting him to a pervasive risk of harm.
 
 
 5
 The case went to trial after this court reversed a grant of summary judgment in favor of the defendants, see Roland v. Johnson, 856 F.2d 764 (6th Cir.1988). A jury returned a verdict awarding Mr. Roland compensatory damages in the amount of $168,000 and punitive damages in the amount of $200,000. A judgment entered on this verdict was affirmed on appeal. See Roland v. Johnson, No. 90-1343 (6th Cir. May 22, 1991) (unpublished).
 
 
 6
 As a prevailing party, Mr. Roland submitted a request for attorney fees pursuant to 42 U.S.C. § 1988. He sought fees of approximately $325,000; the request was based upon a total of 1,865.6 hours of attorney time billed at rates of $50-$150 per hour, plus an enhancement of 33 percent to compensate for the contingency risk of non-payment. Itemized time entries, attorneys' declarations, and affidavits attesting to the attorneys' qualifications were submitted to support the reasonableness of the requested rates. Mr. Roland also requested approximately $28,000 for out-of-pocket expenses and other costs incurred during the litigation of his case, including approximately $15,000 in fees and $2,700 in expenses attributable to experts. An itemized list of expenses was also submitted.
 
 
 7
 After reviewing the billing and cost records, the district court ruled that the amount requested was excessive. The court reduced the number of billable hours on account of duplication; subtracted the trial hours of an attorney who sat second chair during the trial; refused to adjust the attorneys' hourly rates to account for inflation; and lowered the hourly rates of all attorneys to reflect each attorney's experience, the type of service rendered, and the time period in which such services were provided. These adjustments resulted in an attorney fee award of $148,552.50. With respect to the request for expenses, the court denied the request as not having been adequately supported. Mr. Roland has appealed; there is no cross-appeal.
 
 II
 
 8
 42 U.S.C. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the cost." The Supreme Court has indicated that the courts are to calculate attorney fees under the "lodestar" method. Blanchard v. Bergeron, 489 U.S. 87, 94 (1989). Under this methodology the number of hours reasonably expended by the attorney are multiplied by the attorney's reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the figure so calculated represents a reasonable fee. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).
 
 
 9
 Appellate courts have repeatedly emphasized that determination of a fee award is within the sound discretion of the district court. Hensley, 461 U.S. at 437. As we said in Louisville Black Police Officers Organization, Inc. v. City of Louisville, 700 F.2d 268, 274 (6th Cir.1983), "the district court judge who presided over a case is in the best position to evaluate the reasonableness of fee requests, both in terms of the number of hours spent and a reasonable hourly rate of compensation." See also Blanchard, 489 U.S. at 96 ("It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case").
 
 
 10
 As to the number of hours reasonably expended in the present case, Mr. Roland does not challenge the district court's reductions due to duplication. He does contend, however, that the court erred in subtracting the hours billed for a second chair attorney at trial. The attorney in question billed 14 to 16 hours daily during the trial period. Six hours per day (42 hours total) were excluded by the district court. The court explained that "[w]hile this case was hotly disputed, it was not sufficiently complex to require two attorneys at trial." We have no basis for concluding that this determination represented an abuse of discretion.
 
 
 11
 District courts are required to exclude hours that are not "reasonably expended." Hensley, 461 U.S. at 434. As the Supreme Court has recognized, "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely." Id. In the case at bar the record reflects that the lead trial counsel, Larry Bennett, is a capable and experienced civil rights attorney who could probably have handled the trial by himself. The district court possessed first-hand knowledge of the complexities of the case, and the court acted within its discretion in excluding part of the time charged for the second trial lawyer.
 
 
 12
 With respect to the other factor in the "lodestar" calculation, Mr. Roland contends that the hourly rates of compensation set by the district court were too low. He says that the rates he submitted were consistent with those charged by attorneys in the relevant market area; that the district court's rate determination failed to take into account the complexity of the issues presented, the skill of counsel, or the excellent result achieved; that the district court should have applied the attorneys' current rates to account for delay in payment; and that the district court ought to have accepted the rates as proposed because no evidence was presented against them. Here again, however, we cannot say that the district court abused its discretion.
 
 
 13
 " 'Reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). Hourly rates should not exceed what is necessary to encourage lawyers within the relevant community to undertake legal representation. Coulter v. State of Tennessee, 805 F.2d 146, 149 (6th Cir.1986), cert. denied, 482 U.S. 914 (1987); cf. Blum, 465 U.S. at 897. Such rates should not be the equivalent of the rates charged well-to-do clients. Coulter, 805 F.2d at 149. The fee-shifting statutes are designed to provide reasonable compensation, to the end that injured parties will be able to obtain adequate legal representation when there has been a violation of specific federal laws. Delaware Valley, 478 U.S. at 565. "These statutes were not designed as a form of economic relief to improve the financial lot of attorneys...." Id.[1]
 
 
 14
 The district court decided to reduce the hourly fees claimed in this case only after the court had considered the attorneys' level of experience, the services they provided, and the time period of their representation. The more experienced civil rights attorneys received a higher rate for their efforts in preparing the case for trial than did the attorneys with little experience in litigating prisoner civil rights cases. Mr. Bennett, the most experienced civil rights lawyer, received the highest rate (100% of the amount requested) for his work during trial. A legal assistant was paid 100 percent of her requested rate as well.
 
 
 15
 Although the defendants presented no evidence to counter the rates requested, the district court had discretion to accept, reject, or modify the requested rates based on its experience and knowledge of the relevant marketplace. The District Judge (LaPlata, J.) was involved in the case from start to finish. Accordingly, and as one who is regularly called upon to review fee matters in the Eastern District of Michigan, he was in the best position to evaluate the legal work in light of the market for legal services in that district. See Louisville Black Police Officers Organization, 700 F.2d at 278 (the district judge is in the best position to determine the market value of an attorney's services). See also Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990) ("the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").
 
 
 16
 As to the matter of an adjustment due to delay in payment, again we find no abuse of discretion. A district court is not required to adjust the award for inflation in every case. Louisville Black Police Officers Organization, Inc., 700 F.2d at 274. Approximately six years passed from the time this case began until the time of the fee award. Six years is not so long as to require an increase for inflation. Cf. Louisville Black Police Officers Organization, Inc. (no such increase required where there was a four-year delay).
 
 
 17
 Mr. Roland argues next that the fee award was inadequate because there was no enhancement to compensate for the contingent nature of the fee recovery. In the recent case of City of Burlington v. Dague, 112 S.Ct. 2638 (1992), however, the Supreme Court held that a district court is not permitted to enhance the "lodestar" amount on account of a contingency fee arrangement. The district court did not err in this regard.
 
 III
 
 18
 Finally, Mr. Roland contends that he is entitled to recover the litigation expenses he incurred in addition to attorney fees. Out-of-pocket litigation expenses may be allowed as part attorney fee awarded under § 1988, Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 634 (6th Cir.1979), cert. denied, 447 U.S. 911 (1980), and other costs may be awarded under 28 U.S.C. § 1920. Here the district court declined to allow recovery of any such expenses.
 
 
 19
 The district court did not err with respect to the expert witness fees claimed by Mr. Roland. The Supreme Court held in West Virginia University Hospitals, Inc. v. Casey, 111 S.Ct. 1138, 1148 (1991), that "s 1988 conveys no authority to shift expert fees." Thus a district court could not award expert witness fees as part of a prevailing party's expenses except for the amounts authorized by 28 U.S.C. § 1821(b).
 
 
 20
 The Civil Rights Act of 1991, Pub.L. No. 102-166, was signed into law subsequent to the Casey decision. Section 113 of the Act provides that "[i]n awarding an attorney's fee ... the court, in its discretion, may include expert fees as part of the attorney's fee." Mr. Roland argues that the Civil Rights Act should be applied retroactively, but we are not persuaded that it should be. The Supreme Court has yet to resolve the "apparent tension" between Bradley v. Richmond School Board, 416 U.S. 696 (1974)[2]--a case holding that the law in effect at the time of a court's decision should be applied--and Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988), which held that congressional enactments should not be applied retroactively unless their language requires a different result. In Vogel v. City of Cincinnati, 959 F.2d 594, 598 (6th Cir.1992), petition for cert. filed (June 11, 1992), we declined to give the 1991 Civil Rights Act retroactive effect in connection with a claim for damages because retroactive application would have affected the substantive rights and liabilities of the litigants.[3] See also Bennett v. New Jersey, 470 U.S. 632, 639 (1985) (statutes affecting substantive rights and liabilities are presumed to have only prospective effect).
 
 
 21
 In the case at bar there is little doubt that a retroactive application of § 113 of the 1991 Act would affect the substantive liability of the defendants. Prior to the Act, expert witness fees were not recoverable as such under § 1988. The most the defendants in this case could have been held liable for with respect to expert witnesses, including a $30 per day attendance fee under 28 U.S.C. § 1821(b), is a total said to have come to $771.65. Retroactive application of § 113(c) would increase this by over $14,000--an order of magnitude that militates strongly against retroactive application. See Konstantopoulos v. Westvaco Corporation, 1992 WL 162957, 1992 U.S.Dist. LEXIS 9466 (D.Del. June 19, 1992) (§ 113 creates a potential increase in liability which could affect the parties' rights and obligations and thus should be given prospective application only).[4]
 
 
 22
 As to the remainder of the non-attorney-fee expenses, it seems to us that the itemization was sufficiently specific and the relationship of at least some of the expenses to legitimate purposes was sufficiently clear to make it inappropriate to disallow the expenses without more of an explanation than that given by the district court.
 
 
 23
 The order of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Where the burden of such fees falls on the shoulders of the taxpayers, the interests of the taxpayers are by no means irrelevant. Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 644 (6th Cir.1979), cert. denied (Weick, J. concurring and dissenting in part), 447 U.S. 911 (1980)
 
 
 [2]
 In Bradley, where an attorney fee statute was applied retroactively, the statute did no more than provide an "additional basis or source" for the defendant's liability to pay the attorney's fees. In the instant case, by contrast, there was no such liability under § 1988, and the statute created a new source of liability
 
 
 [3]
 Three other circuits have also decided that the Act should not be applied retroactively. See Johnson v. Uncle Ben's, Inc., 965 F.2d 1363 (5th Cir.1992); Mozee v. American Commercial Marine Service Company, 963 F.2d 929 (7th Cir.1992), petition for cert. filed (Aug. 5, 1992); Fray v. Omaha World Hearld Co., 960 F.2d 1370 (8th Cir.1992)
 
 
 [4]
 Konstantopoulos is in conflict with Sudtelgte v. Sessions, 789 F.Supp. 312 (W.D.Mo.1992) where the court ruled that § 113 of the Act was a remedial change and should be applied retroactively. For the reasons given above, we do not find Sudtelgte persuasive