**Eddie BYRD, et al., Plaintiffs,**

v.

**Brad BRANDEBURG, et al., Defendants.**

No. 1:95–CV–1092.

United States District Court,
N.D. Ohio,
Eastern Division.

May 30, 1996.

Diane E. Citrino, Housing Advocates, Inc., Cleveland, OH and Edward G. Kramer, Kramer & Nierman, Cleveland, OH, for plaintiffs.

Peter F. Fletcher, Northfield, OH, Philip J. Weaver, Jr., and Mary Brabenec Percifull, Smith, Marshall & Weaver, Cleveland, OH, for defendants.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

This Court previously ruled that defendant Brad Brandeburg is liable to the plaintiffs for violations of the Fair Housing Act and 42 U.S.C. § 1982. In addition, this Court also found that Brad Brandeburg's parents, defendants Gerald and Cheryl Brandeburg, are liable to the plaintiffs under O.R.C. § 3109.09, one of Ohio's parental liability statutes. (*See* Memorandum and Order of March 18, 1996, docket # 17). These findings were made after the plaintiffs filed a motion for summary judgment on the liability issues, which the defendants did not oppose. By agreement of the parties, a bench trial on damages was held on April 30, 1996. At trial, the plaintiffs presented the testimony of plaintiff Eddie Byrd and of Mr. Byrd's daughter, Glynis Deadwyler. Defendants presented the testimony of Cheryl Brandeburg.

As set forth more fully in this Court's March 18, 1996 Memorandum and Order, on October 27, 1994, a Molotov cocktail was thrown onto the porch of the plaintiffs' home. The facts set forth in the plaintiffs' summary

judgment motion, which facts stood undisputed by the defendants, demonstrated that there was tremendous racial animus between the Byrds and the Brandeburgs and that Brad Brandeburg participated in throwing the Molotov cocktail at the Byrd's home. The device landed on the porch of the Byrd home and caused damage to that porch. The Byrds, Mrs. Deadwyler and Mrs. Deadwyler's children were all at home at the time the porch ignited.

At trial, Mr. Byrd testified that the device caused physical damage to the porch, which he repaired himself. The physical damage required replacement of some of the planks of wood on the porch and repainting of the porch. Mr. Byrd testified that he had invoices for the cost of the materials used in these repairs, but these invoices were never presented in court. In addition, Mr. Byrd testified that the total cost of repairing the porch, including the cost of his own labor, was one thousand dollars.

Mr. Byrd also testified that both he and his wife suffered emotional distress from the incident. Mr. Byrd stated at trial that the incident changed his whole outlook regarding his home and his neighborhood. He testified that, since the incident, he feels as though he always must be "on guard". He also testified that, immediately after the incident, his blood pressure increased and he was not able to sleep well due to the need to stand guard over his family and his home.

Mrs. Byrd did not appear at trial. Counsel for the Byrds represented that she was under her doctor's care for respiratory problems. Mr. Byrd related, however, that after the incident, Mrs. Byrd became "highly emotionally upset" and that her "whole life pattern was altered" by this incident. He testified that she was hospitalized one week after the incident, due to hypertension. He testified that Mrs. Byrd was now afraid to stay in the house alone.

The Byrd's daughter, Mrs. Glynis Deadwyler, testified that the effect of the incident upon her parents was "devastating" and that it changed everything in their household. She testified that, as a result of the incident, her mother could not stay at home alone and that someone always had to "stand guard" and investigate any noise. She testified that her family no longer holds holiday celebrations at her parent's home and that the incident became the focus of her mother's life. She also testified that, although her father was typically a nonviolent person, he purchased and kept a gun in the home for protection after the incident.

### Damages against Brad Brandeburg under the Fair Housing Act and § 1982

The Fair Housing Act provides that, if the court finds that a discriminatory housing practice has occurred, the court may award a plaintiff "actual and punitive damages". 42 U.S.C. § 3612(c)(1). Courts have held, under the Fair Housing Act, that plaintiffs may recover, as compensatory damages, out-of-pocket expenses for property damage and damages for emotional distress. *See Baumgardner v. Secretary of H.U.D.*, 960 F.2d 572, 580–581 (6th Cir.1992); *Stewart v. Furton*, 774 F.2d 706, 710 (6th Cir.1985) (dicta). The Sixth Circuit has used a "totality of the circumstances" standard in evaluating a plaintiff's right to such damages in housing discrimination cases. *Baumgardner*, 960 F.2d at 581.

■ The proof necessary to demonstrate the extent of out-of-pocket expenses to repair property damage is fairly obvious. For example, invoices for the repairs to damaged property provide direct proof of the extent of these expenses, as does testimony regarding the nature and extent of work done to effectuate any such repairs. Such direct proof is rarely available, however, for compensatory damages related to emotional distress. Plaintiffs argue in their Trial Brief that such damages may be "inferred from the circumstances of the case". Trial Brief at p. 8. The availability of so-called "presumed damages" in civil rights cases, however, has been limited to those cases in which there is no other evidence of compensatory damages. *Baumgardner*, 960 F.2d at 581–83. "Presumed damages are a substitute for ordinary compensatory damages, not a supplement for an award that fully compensates the alleged injury" *Id.* at 586 (Jones *concurring* ) *quoting Memphis Community School District v.*

*Stachura,* 477 U.S. 299, 310, 106 S.Ct. 2537, 2545, 91 L.Ed.2d 249 (1986). Thus, presumed damages are not awarded in cases where there is other proof of compensatory damages.

■ With respect to the kind of proof that is sufficient to demonstrate compensatory damages for emotional distress, some guidelines have emerged. For example, even after *Stachura,* some circuits have held that a court may not presume emotional distress damages from the fact of housing discrimination. *U.S. v. Balistrieri,* 981 F.2d 916, 931 (7th Cir.1992), *cert. den.* 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993). It is clear, however, that the plaintiff who seeks damages for emotional distress caused by the violation of the Fair Housing Act need not submit medical or other similar empirical evidence of that emotional distress, nor must those damages be amenable to precise calculation. *Morgan v. Secretary of HUD,* 985 F.2d 1451, 1459 (10th Cir.1993); *Balistrieri,* 981 F.2d at 931–32; *see Baumgardner,* 960 F.2d at 581 (Sixth Circuit affirms award of emotional distress damages where the only evidence of those damages was the plaintiff's own testimony about how the incident made him feel).

■ The fact finder may determine the appropriate amount of emotional distress damages, therefore, based upon the plaintiff's own testimony regarding his or her emotional reaction to the incident. Of course, there must be some evidence that the emotional distress testified to was causally related to the incident. *Id.* With respect to the appropriate amount of emotional distress damages, however, few guidelines have emerged. Instead, the courts appear to take a case by case approach.

■ Punitive damages may also be awarded in Fair Housing cases where the defendant acted wantonly and maliciously and in willful disregard of the rights of the plaintiffs. *Marr v. Rife,* 503 F.2d 735, 744 (6th Cir.1974); *Bishop v. Pecsok,* 431 F.Supp. 34, 38 (N.D.Ohio 1976); *Pollitt v. Bramel,* 669 F.Supp. 172, 176–77 (S.D.Ohio 1987). With respect to the appropriate amount of a punitive damages award, lower courts have considered the defendant's income and means. *Laudon v. Loos,* 694 F.Supp. 253, 255 (E.D.Mich.1988). In addition, some courts have held that the amount of punitive damages awarded should bear a rational relationship to the amount of compensatory damages awarded. *Pollitt,* 669 F.Supp. at 177; *Darby v. Heather Ridge,* 827 F.Supp. 1296, 1300 (E.D.Mich.1993).

■ Applying all of these considerations to the facts and evidence in this case, this Court finds that, for the violation of the plaintiff's rights under the Fair Housing Act and § 1982, the plaintiffs are entitled to recover the amount of one thousand dollars (**$1000.00**) from Brad Brandeburg for expenses incurred in repairing the porch. This Court is somewhat disturbed by the fact that Mr. Byrd testified on cross examination that he had receipts and invoices to substantiate at least the cost of the materials purchased to repair his porch, but these receipts were never presented to this court at trial. Mr. Byrd was a credible witness, however, and it does not seem appropriate to penalize the plaintiffs (or more appropriately, to inadequately compensate them) merely because Mr. Byrd chose to use his own labor to effectuate the repairs on his home. This Court, therefore, awards the full amount of compensatory damages identified by Mr. Byrd at trial.

■ This Court also finds that the plaintiffs are entitled to recover from Brad Brandeburg the amount of one thousand dollars (**$1,000.00**) for emotional distress. This Court credits the testimony of both Mr. Byrd and Mrs. Deadwyler regarding the emotional distress experienced by the Byrd family as a result of the incident. Although this Court recognizes that this amount is less than what the plaintiffs have requested, it is not intended to diminish the serious emotional impact of the events of October 27, 1994 in any way. Rather, it is this Court's judgment that this dollar amount is appropriate under all of the circumstances in this case.

■ This Court finds that the willfulness and maliciousness of the actions taken by Brad Brandeburg make punitive damages particularly appropriate in this case. Mr.

Brandeburg's relative youth and lack of apparent income, as well as the limited nature of the compensatory damages awarded constrain this Court's ability to award substantial punitive damages, however. Accordingly, the plaintiffs shall recover the amount of fifteen hundred dollars ($1,500.00) in punitive damages from Brad Brandeburg.

### Damages against Cheryl and Gerald Brandeburg under O.R.C. § 3109.09

■ Due to the willful nature of the property damage caused by Brad Brandeburg, this Court has previously determined that Cheryl and Gerald Brandeburg are jointly and severally liable for the actions of their son under Ohio's parental liability statute set forth in O.R.C. § 3109.09. That section provides that the plaintiffs may recover "compensatory damages not exceeding six thousand dollars and court costs." Plaintiffs argue that "compensatory damages" under this statute should include not only damages for out-of-pocket expenses incurred in repairing the property damage, but also damages for emotional distress.

Ohio courts have held that this parental liability statute must be narrowly construed because it is in derogation of the common law. *Nationwide Insurance Co. v. Love*, 22 Ohio App.3d 9, 488 N.E.2d 226 (1984). In considering the nature of the statute and its intended purpose, Ohio courts have also found that § 3109.09 is compensatory and not penal in nature and that its primary purpose is to compensate the innocent victim of property damage. *Rudnay v. Corbett*, 53 Ohio App.2d 311, 374 N.E.2d 171 (Cuyahoga Cty. 1977). Other Ohio parental liability statutes expressly provide for recovery of punitive damages and damages for emotional distress, however, no such express provision for emotional distress damages is made in § 3109.09. *See* O.R.C. § 2307.70(C). In light of these factors, this Court does not interpret § 3109.09 to provide for damages for emotional distress. Rather, this Court interprets the statute as providing for recovery from parents only for property damage willfully caused by their children. Accordingly, the plaintiffs may recover from Cheryl and Gerald Brandeburg the sum of one thousand dollars ($1,000.00) for the property damage to the Byrd's home that was willfully caused by Brad Brandeburg. The liability of Cheryl and Gerald Brandeburg is joint and several with the liability of Brad Brandeburg for these same losses; the Byrds may recover only once for the damage to their property. Thus, to the extent that a portion of this $1,000.00 is collected from Brad Brandeburg, that amount shall be subtracted from the portion of the $1,000.00 to be paid by his parents, and in the event Mr. and Mrs. Brandeburg satisfy this judgment against them, the liability of their son will be reduced accordingly.

### Attorney's Fees

■ In addition to compensatory damages, prevailing plaintiffs under the Fair Housing Act and § 1982 may also recover their reasonable attorney's fees and court costs. 42 U.S.C. § 1988 and § 3612(c). In this case, the plaintiffs, having been granted summary judgment on the merits of their claims, are clearly prevailing plaintiffs. Accordingly, this Court finds that the plaintiffs are entitled to recover attorney's fees from Brad Brandeburg under §§ 1988 and 3612(c).

Plaintiffs also argue in their Trial Brief that they are entitled to recover their attorney's fees from Cheryl and Gerald Brandeburg under O.R.C. § 3109.09. Plaintiffs cite to one case in which the court indicated that, even under a narrow interpretation of § 3109.09, if there is evidence that the child willfully damaged the property in question, a trial court would have authority to award attorney fees under the statute. *Nationwide Insurance Co. v. Love*, 488 N.E.2d at 231. At trial, counsel for the defendant conceded that, where the actions of the child are deemed to be willful, attorney fees may be assessed against parents under § 3109.09, provided those fees come within the six thousand dollar cap set by that statute. In this case, it is undisputed that Brad Brandeburg willfully damaged the Byrd's property. Accordingly, this Court finds that the plaintiffs may collect attorney fees from Cheryl and Gerald Brandeburg pursuant to § 3109.09.

The determination of a fee award pursuant to the civil rights statutes is within the sound discretion of the trial court. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Roland v. Johnson,* 1992 WL 214441 (6th Cir. 1992). "The district court judge who presided over a case is in the best position to evaluate the reasonableness of fee requests, both in terms of the number of hours spent and a reasonable hourly rate of compensation." *Louisville Black Police Officers Organization, Inc. v. City of Louisville,* 700 F.2d 268, 274 (6th Cir.1983).

The reasonableness of an hourly rate is to be determined by the prevailing market rates in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). While such rates should not exceed what is necessary to encourage lawyers within that relevant community to undertake legal representation of civil rights litigants, such rates should not be the equivalent of the rates charged to well-to-do clients. *Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir.1986), *cert. den.,* 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). As the Supreme Court has recognized, the civil rights fee-shifting statutes are designed to provide reasonable compensation to the end that injured parties will be able to obtain adequate legal representation when there has been a violation of federal law; "these statutes are not designed as a form of economic relief to improve the financial lot of attorneys ..." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

Counsel for plaintiffs have submitted affidavits and descriptions of the time billed to this case. (Docket # 24). This Court finds that the time billed to this case is not unreasonable and will allow the plaintiffs to recover for all of this time.

Counsel for plaintiffs, Ms. Citrino and Mr. Kramer, seek hourly rates of $175.00 and $250.00, respectively. Both argue that these rates are within the prevailing rates of attorneys with similar experience in similar cases in Cleveland Ohio. This Court finds, however, that these hourly rates are not reasonable in a case of this type in this market. Rather, it is this Court's judgment that, in accordance with the prevailing rates for civil rights cases in this market, counsel shall be compensated at the rate of $100.00 per hour and $150.00 per hour, respectively. Thus, the total attorney fee award for the plaintiff shall be $5855.00.

Plaintiffs are also entitled to recover their costs. While a list of costs was provided to this Court, including costs for postage, fax charges, travel, parking, copying, and deposition costs, the plaintiffs have failed to explain how these costs were incurred or why they were necessary. This Court recognizes that deposition testimony was certainly useful in ruling upon the plaintiffs' motion for summary judgment, however, the amount listed is not sufficiently detailed to award those costs in full. Accordingly, plaintiff shall recover their filing cost of $120.00 and half of the deposition costs listed, $241.40. Plaintiffs shall recover total costs of $361.40.

With respect to the division of attorney's fees and costs between Brad Brandeburg and his parents, this Court finds that the facts necessary to the resolution of both claims were identical and that the costs and fees should, thus, be apportioned evenly. Cheryl and Gerald Brandeburg shall pay $3,108.20 of these costs and are jointly and severally liable with Brad Brandeburg for $1,000.00 in property damage. Thus, the total amount could be paid by these defendants, under § 3109.09, is $4,108.20, which is well within the statutory limit of $6,000.00. Brad Brandeburg shall pay an equal share of attorneys fees and costs of $3,108.20. Pursuant to § 1988 and 3612(c), Brad Brandeburg is jointly and severally liable with his parents for $1,000.00 in property damage, and is solely liable for $1,000.00 in emotional distress damages, $1,500.00 in punitive damages and $3,108.20 in attorney's fees and costs.

**IT IS SO ORDERED.**